IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**RICKEY L. NEAL,**
**ADC #070303**                                                                                              **PLAINTIFF**

**V.**                           **CASE NO. 5:17-CV-211-JLH-BD**

**TASHA KELLY,** *et al*.                                                                          **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.    Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge J. Leon Holmes. Any party may file written objections to this Recommendation. Objections must be specific and must include the factual or legal basis for the objection. All objections must be received in the office of the Court Clerk within 14 days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive their right to appeal.

**II.   Discussion:**

A.   Background

Plaintiff Rickey L. Neal, an inmate at the Varner Unit of the Arkansas Department of Correction ("ADC"), filed this civil rights lawsuit *pro se*. (Docket entry #2) In his complaint, Mr. Neal alleges that his legal mail was unreasonably delayed, and as a result, he lost his right to pursue certain claims and appeals. (#2)

Defendants Kelly, Branch, Andrews, and Kelley ("Defendants") have now moved for summary judgment on the issue of exhaustion. (#19) Mr. Neal responded by filing a cross motion for summary judgment that essentially argues that Defendants' motion for summary judgment should be denied. (#26)

B.     Standard

Summary judgment is granted to a party when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any fact important to the outcome of the lawsuit. FED. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). If important facts remain in dispute, the court cannot grant summary judgment, and the case is set for a trial.

C.     Exhaustion

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss all claims filed under 42 U.S.C. § 1983 that were not fully exhausted prior to the date the complaint was filed. See 42 U.S.C. § 1997e(a) (declaring, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory"). The specific procedures required for exhaustion

are determined by the prison where the inmate is incarcerated—here the ADC—and not by federal law.

    D.    Discussion

At all times relevant to the claims in this lawsuit, Administrative Directive ("AD") 14-16 was in effect. (#19-2) Under AD 14-16, inmates are required to fully exhaust their administrative remedies as to all defendants before filing a § 1983 lawsuit. (*Id.* at 17-18) Aggrieved inmates must first file a unit-level grievance form within fifteen days of the incident. (*Id.* at 5) The unit-level grievance form must include a statement that "is specific as to the substance of the complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id.* at 5-6) This form must be presented to a designated problem-solver or to any staff member holding the rank of sergeant or above. (*Id.* at 6) A staff member presented with a grievance must sign and date the form. (*Id.*) If the problem cannot be resolved, the resolution attempt must be documented on the form and, if the inmate is not satisfied, he or she may proceed to step two. This next step must be taken within three days. (*Id.* at 7-8)

At step two, the inmate must explain why the informal resolution was inadequate. (*Id.* at 8) Upon receipt of the step-two form, the grievance officer is required to transmit an acknowledgement or rejection to the inmate within five working days. (*Id.* at 9) If the inmate does not receive a response within twenty days, the inmate may proceed to the next level of the process by appealing to the chief deputy/deputy/assistant director within five working days. (*Id.* at 10)

Defendants produced the affidavit of Barbara Williams, the grievance coordinator for the ADC, in support of their contention that Mr. Neal failed to fully exhaust his administrative remedies. Ms. Williams states that Mr. Neal submitted only one grievance (EA-17-00815) pertaining to the claims he raised in this lawsuit between April 2017 and August 14, 2017. (#19-1 at 4)

In Grievance EA-17-00815, filed on June 6, 2017, Mr. Neal complained that the Defendants had exhibited "intentionally negligent with malicious intent by withholding" his legal mail. (#2 at 10) Two pieces of mail, postmarked April 13, 2017, and April 18, 2017, did not arrive at the Randall L. Williams Unit until May 30, 2017, and May 18, 2017, respectively. (*Id.* at 6)

According to Ms. Williams, on June 15, 2017, Mr. Neal moved to step two in the grievance process. (*Id.* at 4) On June 22, 2017, Mr. Neal's grievance was rejected as untimely because it was filed more than fifteen days after the incident.

Giving ADC officials every benefit, their calculation of the 15-day period was a mathematical error. In determining when to begin the clock on Mr. Neal's 15-day window to file a grievance about the failure to deliver Mr. Neal's mail, officials deemed the "incident" as having occurred on the dates the mail was *postmarked*; that is, the date the mail was *sent* rather than on the date Mr. Neal finally received the delayed mail and became aware that the mail had been mishandled. Had the officials deemed the "incident" the date on which Mr. Neal actually *received* the delayed mail, they would presumably have found his grievance timely and addressed the merits.

Officials placed Mr. Neal in an impossible position—literally unable to file a

timely grievance under their method of calculating when the incident giving rise to his complaint occurred. Perhaps this catch-22 accounts for Mr. Neal's belief that ADC officials "falsified" dates in his grievances.

Mr. Neal appealed the rejection, but the appeal was rejected because he failed to attach his unit-level grievance form to the appeal. (#19-1 at 5) Under AD 14-16, inmates seeking to appeal a grievance decision must attach their original unit-level grievance form. (#19-2 at 11) Mr. Neal does not contend that he attached the required unit-level grievance form.

The Court considered finding that the ADC grievance procedure, as applied to Mr. Neal in this case, was unavailable, since it was factually impossible for him to have filed a "timely" grievance, given the ADC's interpretation of when the incident at issue occurred. But, because Mr. Neal did not follow the requirement to attach the unit-level grievance form to his appeal, his grievance was not fully exhausted. As a result, the Defendants' motion should be granted.

### III. Conclusion:

The Court recommends that Defendants' motion for summary judgment on the issue of exhaustion (#19) be GRANTED. Mr. Neal's motion for summary judgment (#26) should be DENIED. The lawsuit should be DISMISSED, without prejudice, based on failure to exhaust his administrative remedies.

DATED this 6th day of February, 2018.

_____
UNITED STATES MAGISTRATE JUDGE